UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERRY GALLION,

                Petitioner,

vs.                            Case No. 3:17-cv-663-J-39MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                Respondents.

_____

## **ORDER**

## I.  **INTRODUCTION**

Petitioner, who is proceeding pro se, challenges his state court conviction through a Petition for Writ of Habeas Corpus (Petition) (Doc. 1) pursuant to 28 U.S.C. § 2254. He is serving a fifteen-year prison sentence as a prison release reoffender as to count three (robbery) and a three-year consecutive sentence as to count four (fleeing or attempting to elude a law enforcement officer). Petition at 1. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 24).[1] Petitioner responded by filing a Reply to Respondents' Response to Order to

---

[1] The Court hereinafter refers to the Exhibits to Answer to Petition for Writ of Habeas Corpus (Doc. 24) as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.

Show Cause (Doc. 29). The Petition is timely filed. <u>See</u> Response at 6-7.

## II. EVIDENTIARY HEARING

The pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004). As the record refutes the asserted factual allegations or otherwise precludes habeas relief, the Court finds Petitioner is not entitled to an evidentiary hearing. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). Petitioner has not met his burden of demonstrating a need for an evidentiary hearing, particularly since an evidentiary hearing was conducted in state court on several claims. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012).

## III. CLAIMS OF PETITION

In the instant Petition, Petitioner raises twelve grounds. In ground one, he claims the trial court erred in denying the motion for judgment of acquittal on the charge of robbery, asserting the evidence was insufficient to show the property taken was in the possession or control of the victim at the time of the taking.

Petition at 14. Petitioner raises one claim of ineffective assistance of appellate counsel in ground two, contending his appellate counsel was ineffective for failure to argue a properly preserved claim that the trial court erred in failing to conduct an adequate Richardson[2] hearing concerning the state's late disclosure of photograph and clothing evidence used for identification purposes. Petition at 15.

Petitioner raises eight claims of ineffective assistance of trial counsel. He claims trial counsel was ineffective for: failure to object to the trial court imposing an illegal sentence under the prison release reoffender statute and for failure to award jail time credit on count four (ground three); failure to timely object to the state's late disclosure of evidence, a photograph and clothing (ground four); providing affirmative misadvice concerning the right to testify, including advice that Petitioner's prior conviction would automatically be introduced to the jury if Petitioner testified (ground five); failure to investigate, depose, and call witnesses (Linda Robinson, Leroy Harrison III, Elijah Laster, Johnny Lee, Darrell Monger, and Ola Rae Monger) (ground six); failure to successfully suppress Petitioner's incriminating statements made during his arrest (ground seven); providing affirmative misadvice concerning the penalty Petitioner faced and for failure to convey the strength and

---

[2] Richardson v. State, 246 So.2d 771 (Fla. 1971).

- 3 -

weaknesses of the state's case, resulting in Petitioner's inability to make an informed decision as to whether or not to accept a plea offer (ground eight); failure to object and claim fundamental error concerning the improper jury instruction for aggravated fleeing that failed to properly instruct the jury on the elements of the crime (ground nine); and failure to object to the prosecutor's systematic striking of African American jurors from the panel (ground ten). Petition at 20, 23, 28, 32, 35, 37, 40, & 44.

In ground eleven, Petitioner raises one claim of ineffective assistance of post conviction counsel for failure to interview and call witnesses to the evidentiary hearing on the post conviction motion. Petition at 47. Finally, in ground twelve, Petitioner claims the post conviction court committed reversible error in reappointing post conviction counsel for the second evidentiary hearing on the post conviction motion, asserting a conflict arose during the first hearing. Petition at 49.

## IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254. This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." <u>Shoop v. Hill</u>, 139 S.Ct. 504, 506 (2019) (per curiam). The AEDPA statute:  "respects the authority and ability of state courts and their dedication to the protection

- 4 -

of constitutional rights." <u>Id</u>. Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing <u>Virginia v. LeBlanc</u>, 137 S.Ct. 1726, 1728 (2017) (per curiam)).

Applying the statute as amended by AEDPA, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." <u>Nance v. Warden, Ga. Diagnostic Prison</u>, 922 F.3d 1298, 1300-1301 (11th Cir. 2019).

Thus, in order to obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent. <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. <u>Meders</u>, 911 F.3d at 1351. As noted in <u>Richter</u>, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. <u>Burt v. Titlow</u>, 571 U.S. 12, 19-20 (2013).

In undertaking its review, this Court is not obliged "to flyspeck the state court order or grade it." <u>Meders</u>, 911 F.3d at

1349. Indeed, specificity and thoroughness of the state court decision is not required; even if the state court fails to provide rationale or reasoning, AEDPA deference is due "absent a conspicuous misapplication of Supreme Court precedent." Id. at 1350 (citation and quotation marks omitted).

Of importance, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). But, this presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018) (Wilson).

Once a claim is adjudicated in state court and a prisoner seeks relief in the federal court system, AEDPA's formidable barrier to habeas relief comes into play, and it is very difficult for a petitioner to prevail under this stringent standard. As

such, state-court judgments will not easily be set aside once the Court employs this highly deferential standard that is intentionally difficult to meet. See Richter, 562 U.S. at 102. Although AEDPA does not impose a complete bar to issuing a writ, it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. Id. In sum, application of the standard set forth in 28 U.S.C. § 2254(d) ensures that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, and not a mechanism for ordinary error correction. Richter, 562 U.S. at 102-103 (citation and quotation marks omitted).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises multiple claims of ineffective assistance of counsel. To prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

In order to obtain habeas relief, a counsel's errors must be so great that they actually adversely effect the defense. In order

to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The standard created by Strickland is a highly deferential standard, requiring a most deferential review of counsel's decisions. Richter, 562 U.S. at 105. Not only is there the "Strickland mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision. Nance, 922 F.3d at 1303. Thus,

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

Nance, 922 F.3d at 1303.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In ground two, Petitioner raises a claim of ineffective assistance of appellate counsel. Petition at 15. The two-part Strickland standard is applicable to this claim. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). The Eleventh Circuit describes Strickland's governance of this type of claim:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense.

See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. at 2064.

Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1331 (11th Cir. 2016), cert. denied, 137 S.Ct. 505 (2016).

As with a claim of ineffective assistance of trial counsel, the combination of Strickland and § 2254(d) requires a doubly deferential review of a state court decision. See Richter, 562 U.S. at 105. When considering deficient performance by appellate counsel,

a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id.[3] at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)); see also Burger v. Kemp, 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987) (finding no ineffective assistance of counsel when the failure to raise a

---

[3] Strickland, 466 U.S. at 689.

particular issue had "a sound strategic basis").

Overstreet, 811 F.3d at 1287; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (footnote omitted) (since the underlying claims lack merit, "any deficiencies of counsel in failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel"), cert. denied, 558 U.S. 1151 (2010).

To satisfy the prejudice prong, a petitioner must show "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted), cert. denied, 543 U.S. 1080 (2005); see Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (per curiam) ("In order to establish prejudice, we must first review the merits of the omitted claim. Counsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'") (citations omitted), cert. denied, 559 U.S. 1010 (2010).

### VII. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In the first ground of the Petition, Petitioner asserts the trial court erred in denying the motion for judgment of acquittal on the charge of robbery, claiming the evidence was insufficient to show the property taken was in the possession or control of the victim at the time of the taking. Petition at 14. Respondents counter that Petitioner failed to fairly present to the state

courts the substance of a federal habeas claim. Response at 19-20. As such, Respondents urge the Court to find Petitioner's due process claim unexhausted and procedurally barred.

The record shows defense counsel, Mr. David Thompson, moved for a motion for judgment of acquittal as to the charge of robbery. He argued there was no evidence the victim was in fear at the time of the robbery. Ex. C at 275. In support of the motion, counsel said the vehicle was outside of the store with the engine running, and while admittedly the taking did not have to be from the actual possession of the victim, "the taking requires that the taking itself must be as a result of the overbearing or the use -- as I read the instruction is the best way to say it, it cannot be taken without use of force." Ex. C at 275-76. Defense counsel asserted the vehicle was already in possession of the Petitioner when the victim came out of the store, as Petitioner was behind the wheel, the keys were in the vehicle, the vehicle was running, and Petitioner simply pulled out of the parking lot. Id. at 276. The trial court denied the motion. Id. Defense counsel renewed the motion, and the trial court denied the renewed motion. Id. at 300-301.

On direct appeal, Petitioner raised one ground: "[t]he trial court erred in denying Appellant's motion for judgment of acquittal on the charge of robbery when the evidence was insufficient to show that the property taken was in the possession or control of the victim at the time of the taking." Ex. E at 2. No mention is made

of a due process claim in the appellate brief.  Ex. E.  No federal cases are referenced, and importantly, no mention is made of _Jackson v. Virginia_, 443 U.S. 307 (1979), the seminal Due Process Clause case.  At most, Petitioner alleged insufficiency to establish the element of robbery that Petitioner "took the motor vehicle from the person or custody of the victim."  _Id_. at 17.  The First District Court of Appeal (1st DCA) affirmed per curiam.  Ex. G.  The mandate issued on April 15, 2009.  _Id_.

In addressing the question of exhaustion, the district court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. _See_ 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." _McNair v. Campbell_, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" _Baldwin v. Reese_, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in _Baldwin_ "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. _McNair_, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." _Kelley_,

> 377 F.3d at 1343–44. Rather, he must make his
> claims in a manner that provides the state
> courts with "the opportunity to apply
> controlling legal principles to the facts
> bearing upon (his) [federal] constitutional
> claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 568 U.S. 1104 (2013).

On appeal, Petitioner failed to reference the federal source of law or any case deciding the claim on federal grounds, and he did not label the claim as federal. Thus, Petitioner never gave the state courts a meaningful opportunity to address a Fourteenth Amendment Due Process Clause claim.

After a thorough review of the record before the Court, the Court concludes Petitioner failed to exhaust a Fourteenth Amendment claim in the state courts. It is clear from state law that any future attempts at exhaustion of this ground would be futile. As such, Petitioner has procedurally defaulted the due process claim.

Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of the Fourteenth Amendment claim. Consequently, ground one is due to be denied.

Alternatively, even assuming the claim is not procedurally barred, Petitioner is not entitled to habeas relief on his claim of a Fourteenth Amendment violation. "In Jackson v. Virginia, 443, U.S. 307, [324] . . ., we held that a state prisoner is entitled to habeas corpus relief if a federal judge finds that 'upon the record evidence adduced at the trial no rational trier of fact could have

found proof of guilt beyond a reasonable doubt.'" <u>McDaniel v.</u> <u>Brown</u>, 558 U.S. 120, 121 (2010) (per curiam). Upon due consideration, the evidence adduced at trial was sufficient to convict Petitioner of robbery. An explanation follows.

This Court "must consider all of the evidence admitted at trial[.]" <u>Id</u>. at 131. Reviewing the evidence "in the light most favorable to the prosecution[,]" <u>Jackson</u>, 443 U.S. at 319, this Court must presume that the trier of fact resolved any conflicts in favor of the prosecution, and giving credit and deference to that resolution, this Court can only set aside a state-court decision as an unreasonable application of . . . clearly established Federal law, if the state court's application is objectively unreasonable. 28 U.S.C. § 2254(d).

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner committed the offense of robbery. The court charged the jury:

> To prove the crime of robbery, the State must prove the following four things: They have to prove each of these beyond any reasonable doubt. The first is that Mr. Gallion took the motor vehicle from the person or custody of Kaazon Riles; second is that force, violence, assault or putting in fear was used in the course of taking; the third is that the property taken was of some value and the fourth is that the taking was with the intent to permanently or temporarily deprive Mr. Riles of his right to the property or any benefit of it.
>
> Now, in the course of taking is a turn [sic] we use. That means the act occurred prior to, contemporaneous with or subsequent to the taking of the property and the act and

the taking of the property constitute a
continuous series of acts or events.

* * * *

The taking must be by the use of force or
violence or by assault so as to overcome the
resistance of the victim or by putting the
victim in fear so that the victim does not
resist.

The law does not require the victim of
robbery resist to any particular extent or
that the victim offer any actual physical
resistance if the circumstances are such that
the victim is placed in fear of death or great
bodily harm if he does not resist. But unless
prevented by fear, there must be some
resistance to make the taking one done by
force or violence.

In order for a taking by force, violence,
or putting in fear to be robbery, it's also
not necessary that the taking be from the
person of the victim. It is sufficient if the
property taken is under the actual control of
the victim so that it cannot be taken without
the use of force, violence, or intimidation
directed upon the victim.

Ex. C at 345-46.

As noted by Respondents, the evidence presented at trial
showed Petitioner took the victim's car by threatening and
intimidating the victim with a gun that the victim thought was
real. The victim was in close proximity to the car with intent to
re-enter the car, but Petitioner told the victim to back off and
threatened and intimidated the victim with the gun so that
Petitioner could drive off in the car unheaded. In Florida, "the
property that is the subject of the taking need not be in the
actual physical possession or immediate presence of the person."

<u>Jones v. State</u> 652 So.2d 346, 350 (Fla. 1995) (per curiam). It constitutes robbery if "the property is taken from 'the person or custody of another' if it is sufficiently under the victim's control so that the victim could have prevented the taking if she had not been subjected to violence or intimidation by the robber." <u>Id</u>. (citation omitted).

In the course of the trial, the victim testified he was very scared after Petitioner pointed the gun at him. Ex. B at 150. The victim testified, when he reached the driver's door of the vehicle, Petitioner tapped a gun on the driver's window and said back off or get back. <u>Id</u>. at 148. The victim testified he would not have allowed Petitioner to take the vehicle but for Petitioner pointing the gun at him. <u>Id</u>. at 152. The victim opined, "he [Petitioner] probably would have had to really run over me to get it." <u>Id</u>.

In this case, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner committed robbery of the vehicle as charged in the information. This Court must defer to this resolution as well as give AEDPA deference to the 1st DCA's decision on direct appeal to the extent the claim was raised in the federal constitutional sense. Also, to the extent that the federal constitutional ground was addressed, the state court's rejection of the constitutional claim is entitled to deference as required pursuant to AEDPA. <u>Brown</u>, 558 U.S. at 132 (a reviewing court must not depart "from the deferential review that <u>Jackson</u> and § 2254(d)(1) demand").

Thus, to the extent a Fourteenth Amendment claim was raised and addressed, the adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on this ground because the 1st DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground one is due to be denied.

## B.  Ground Two

In ground two, Petitioner raises his sole claim of ineffective assistance of appellate counsel. Petition at 15. Petitioner asserts his appellate counsel was ineffective for failure to raise the claim that the trial court erred in failing to conduct an adequate Richardson[4] hearing regarding the state's late disclosure of evidence used for identification purposes. Petition at 15. Petitioner exhausted this ground by presenting it in ground three of his state petition for writ of habeas corpus. Ex. H at 19-29.

---

[4] Richardson, 246 So.2d at 775 (finding when a discovery violation occurs, the trial court must conduct an adequate inquiry, covering at least such questions as whether the violation was willful or inadvertent; was substantial or trivial; and had a prejudicial effect). See Delhall v. State, 95 So.3d 134, 160 (2012) (per curiam) (even if the appellate court finds an abuse of discretion by the trial court, the reviewing court's next step is a harmless error analysis).

The 1st DCA denied the petition alleging ineffective assistance of appellate counsel on its merits. Ex. J.

To provide context for this claim, the Court references the relevant portions of the trial record. After the jury was sworn, opening statements completed, and while the first witness was on the stand, defense counsel, Mr. Thompson, asked to approach the bench. Ex. B at 130. Mr. Thompson informed the court that he had just received a picture from the state. <u>Id</u>. Mr. Thompson said the state called him the day before about a picture of Petitioner and some clothing they wanted to introduce. <u>Id</u>. The court asked why the matter had not been brought up before the swearing of the jury. <u>Id</u>. Mr. Thompson advised the court he had heard about the evidence at 4:30 the day before, and finally saw the items that morning. <u>Id</u>. at 131. The court, noting that the jury had already been sworn, stated Mr. Thompson was too late to object to the evidence. <u>Id</u>. Mr. Thompson said he was waiting for the evidence to be introduced to object. <u>Id</u>. at 132. The court accused counsel of trying to set up a mistrial. <u>Id</u>. Mr. Thompson denied that he had that intent. <u>Id</u>. The court admonished Mr. Thompson that his conduct was unprofessional. <u>Id</u>. at 133. Mr. Thompson apologized and said he was not trying to be unprofessional. <u>Id</u>. The court stated counsel was being both incompetent and unprofessional. <u>Id</u>. Mr. Thompson explained he did not have a lot of time to think the matter through, and he had just received the evidence. <u>Id</u>. He said he believed it was appropriate to object now. <u>Id</u>. at 134.

After this initial exchange, the court inquired as to what counsel wanted to do. _Id_. The court asked if counsel wanted a mistrial, and then stated the evidence was coming in. _Id_. at 135. Mr. Thompson said he did not want the evidence coming in, and he believed it came to him too late. _Id_. The court overruled counsel's objection to the evidence coming in, explaining that the evidence was given to counsel pre-trial, and no objection was made pre-trial. _Id_. After the state offered its explanation as to when the evidence was brought to the attention of Mr. Thompson, the court asked Mr. Thompson "what is the prejudice to the defendant[?]" _Id_. at 136-37. More specifically, the court inquired: "what is the prejudice to you and Mr. Gallion by virtue of this so-called late disclosure which you are late in objecting to?" _Id_. at 138.

At first, Mr. Thompson said he had no idea. _Id_. He then said he would not want any indication the evidence came from the jail as the defense had taken great pains to not reveal Petitioner's incarceration. _Id_. The court assured counsel that information was not going to come out unless Petitioner wanted it brought out. _Id_. When again asked about prejudice to the defense, Mr. Thompson responded:

> If, in fact, they intended to use it, we could have used –– if we have [sic] known before the depositions of the officers they intend to use it to identify with, we would have had that property or those –– those clothes prior to the deposition and could have used that to cross-examine the police officer. We didn't have it at the time of the

> deposition because it wasn't revealed until to
> you.

Id. at 138-39.

At that point, the court provided Mr. Thompson with an opportunity to take depositions. Id. at 139-40. Mr. Thompson confirmed he wanted the opportunity to take depositions.[5] Id. at 140. The court ruled the witnesses were to be made available for depositions. Id. Mr. Thompson objected to the relevance of the photograph, and that objection was overruled. Id. at 142-43.

In this instance, the asserted discovery violation did not materially hinder the defense. Any shortcomings in the trial court's inquiry were harmless as an adequate remedy was offered, accepted, and undertaken by the defense. The defense was given the opportunity to present allegations of prejudice and an opportunity to take depositions to cure any alleged prejudice. The corrective action taken by the court, by allowing depositions to take place, adequately addressed the problem. Any trial court error in failing to conduct a more in-depth Richardson inquiry was harmless.

To prevail on a claim of ineffective assistance of appellate counsel, Petitioner's burden is heavy. He must:

> first show that his counsel was objectively
> unreasonable, see Strickland, 466 U.S., at
> 687-691, 104 S.Ct. 2052, in failing to find
> arguable issues to appeal—that is, that
> counsel unreasonably failed to discover
> nonfrivolous issues and to file a merits brief
> raising them. If [a petitioner] succeeds in

---

[5] Mr. Thompson took the deposition of the officer in question. Ex. C at 211.

such a showing, he then has the burden of
demonstrating prejudice. That is, he must show
a reasonable probability that, but for his
counsel's unreasonable failure to file a
merits brief, he would have prevailed on his
appeal. <u>See</u> <u>id</u>., at 694, 104 S.Ct. 2052
(defendant must show "a reasonable probability
that, but for counsel's unprofessional errors,
the result of the proceeding would have been
different").

<u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000).

Undoubtedly, Petitioner has not satisfied the <u>Strickland</u>
requirements with regard to this claim of ineffective assistance of
appellate counsel. He has not shown that the 1st DCA decided this
claim in a manner contrary to <u>Strickland</u>, or that the 1st DCA's
application of <u>Strickland</u> was objectively unreasonable. Certainly
Petitioner has a constitutional right to effective assistance of
counsel on direct appeal, but "there is no constitutional duty to
raise every nonfrivolous issue." <u>Grossman v. Crosby</u>, 359 F.Supp.2d
1233, 1261 (M.D. Fla. 2005) (citation omitted). With respect to
the underlying claim that the trial court erred in failing to
conduct an adequate <u>Richardson</u> hearing regarding the state's late
disclosure of evidence used for identification purposes, appellate
counsel could have reasonably decided to winnow out this weaker
argument and proceed with the stronger argument presented on direct
appeal.

Upon review, Petitioner's appellate counsel filed a twenty
page brief raising the issue of denial of the motion for judgment
of acquittal on the charge of robbery. Ex. E. Upon the filing of
Petitioner's state petition for writ of habeas corpus, the 1st DCA

reviewed Petitioner's additional arguments concerning claims Petitioner argued his appellate counsel should have raised on direct appeal, and the 1st DCA summarily denied the petition on its merits, thus making its determination that no appellate relief would have been forthcoming. Ex. J. Thus, Petitioner has failed to show a reasonable probability the outcome of the direct appeal would have been different had appellate counsel argued as Petitioner's suggests appellate counsel should have on direct appeal.

The denial of relief on the ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of <u>Strickland</u>. Therefore, Petitioner is not entitled to habeas relief on ground two.

### C. Ground Three

In ground three, Petitioner claims trial counsel was constitutionally ineffective for failure to object to the trial court imposing an illegal sentence under the prison release reoffender statute and for failure to award jail time credit on count four. Petition at 20. The record demonstrates Petitioner, in his Rule 3.850 motion, claimed the ineffective assistance of counsel and sought additional jail time credits as to counts three and four. Ex. L at 6. The court granted the motion as to count three only, crediting Petitioner with seven additional days of jail time credit on count three. <u>Id</u>. at 150.

On appeal of denial of the Rule 3.850 motion, Petitioner raised the following claim: "trial court erred in evidentiary hearing when trial judge orally pronounced that Duval County Assistant State Prosecutor conceded error in Appellant ground one under illegal sentence, and only addressed jail credits, fail [sic] to address prison release re-offender sanction or ineffective assistant [sic] of counselor [sic] in violation of the 5th, 6th, and 14th Amendments rights of the United States Constitution." Ex. Q at ii. Petitioner limited his argument to the court's failure to grant relief on the claim regarding the alleged illegal sanction of a prison release re-offender sentence. Id. at 5-7.

Respondents assert Petitioner's failure to brief the jail time issue after receiving an evidentiary hearing necessarily means Petitioner abandoned this contention on appeal; therefore, the claim should be deemed unexhausted and procedurally defaulted. Response at 37. Upon review, by failing to present the jail time claim on appeal of the denial of his Rule 3.850 motion, Petitioner failed to give the state courts one full opportunity to resolve any constitutional issue related to the claim of ineffective assistance of counsel for failure to object to the trial court not awarding jail time credit on count four.

Ordinarily, a petitioner must exhaust state court remedies prior to presenting a claim to this Court:

> An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies.

28 U.S.C. § 2254(b), (c). **A claim must be presented to the highest court of the state to satisfy the exhaustion requirement.** <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999) ; <u>Richardson v. Procunier</u>, 762 F.2d 429, 430(5th Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443(5th Cir. 1982). **In a Florida non-capital case, this means the applicant must have presented his claims in a district court of appeal.** <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579 (11th Cir. 1995). The claims must be presented in State court in a procedurally correct manner. <u>Id</u>. Moreover, the habeas applicant must have presented the State courts with the same federal constitutional claim that is being asserted in the habeas petition. "It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." <u>Kelley v. Sec'y, Dep't of Corr.</u>, 377 F.3d 1317 (11th Cir. 2004) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971)); <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982). A petitioner is required to present his claims to the state courts such that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270, 275-77 (1971). To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." <u>Jimenez v. Fla. Dep't of Corr.</u>, 481 F.3d 1337 (11th Cir. 2007) (citing <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995).) "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998).

<u>Aguilera v. Jones</u>, No. 15-CV-20406, 2016 WL 791506, at *7 (S.D. Fla. Jan. 13, 2016) (emphasis added), <u>report</u> <u>and</u> <u>recommendation</u>

- 24 -

adopted by No. 15-20406-CIV, 2016 WL 932808 (S.D. Fla. Mar. 10, 2016).

The record shows Petitioner did not brief the claim on appeal of the denial of his post conviction motion. "Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing." Atwater v. Crosby, 451 F.3d 799, 809-10 (11th Cir. 2006) (citing Shere v. State, 742 So.2d 215, 217 n.6 (Fla. 1999) (per curiam)), cert. denied, 549 U.S. 1124 (2007). Thus, Petitioner abandoned the claim of ineffective assistance of counsel for failure to object to the trial court not awarding jail time credits on count four, and the claim is unexhausted. The claim is also procedurally defaulted as it is abundantly clear that this unexhausted claim would be procedurally barred in state court.

There are allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez v. Ryan, 566 U.S. 1, 10 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Petitioner has not shown cause and prejudice nor a manifest injustice will result if this claim is not addressed its merits. Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995), Petitioner has not done so.

- 25 -

The gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" <u>Kuenzel v. Comm'r, Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting <u>Schlup</u>, 513 U.S. at 324), <u>cert</u>. <u>denied</u>, 569 U.S. 1004 (2013). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Ala.</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002). With respect to this unexhausted ground, Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In light of the above, the Court finds that part of ground three concerning the claim of ineffective assistance of counsel for failure to object to the trial court not awarding jail time credits on count four is unexhausted and procedurally defaulted. As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, that part of ground three concerning the claim of ineffective assistance of counsel for failure to object to the trial court not awarding jail time credits on count four is procedurally barred and due to be denied as barred.

Alternatively, this claim of ineffective assistance of counsel is due to be denied as being without merit. In Florida, if a

defendant is convicted of multiple offenses and sentenced to consecutive terms of confinement, he is entitled to pre-sentence jail credit only for the first of the consecutive sentences. Canete v. Fla. Dep't of Corr., 967 So.2d 412, 415-16 (Fla. 1st DCA 2007) (per curiam). It was lawful for the court to provide the credit against count three only. Triatik v. State, 267 So.3d 535, 537 (Fla. 1st DCA 2019) (finding non-entitlement to pyramided jail credit, relying on Daniels v. State, 491 So.2d 543, 545 (Fla. 1986)). Therefore, Petitioner is not entitled to jail credit on count four for which he received a consecutive sentence. See Ex. A at 69-72.

The Court finds trial counsel was not constitutionally ineffective for failure to object to the trial court's refusal to award jail time credit on count four. Defense counsel cannot be ineffective for failing to lodge a futile objection. Brewster, 913 F.3d at 1056. Under these circumstances, it would have been a futile act for counsel to object as he would not have obtained Petitioner relief. Failure to make an objection that would not have been sustained does not constitute ineffective assistance of counsel. Petitioner has failed to demonstrate either deficient performance or prejudice to the outcome. Therefore, he is not entitled to relief on this ground.

The Court will now address the remaining portion of ground three, Petitioner's claim of ineffective assistance of counsel for failure to object to the trial court imposing an illegal prison

release reoffender sentence.[6]  Petition at 20.  As this claim is couched in terms of a Sixth Amendment violation it is "fully cognizable in federal court."  Allen v. Sec'y, Dep't of Corr., No. 17-11828, 2019 WL 1483791, at *5 (11th Cir. April 3, 2019) (per curiam).  Nevertheless, the claim is meritless because "[i]n Florida, '[a] court may at any time correct an illegal sentence imposed by it.'"  Id. (citing Fla. R. Crim. P. 3.800(a)(1)).[7] Based on the fact that Petitioner can object to his sentence at any time, he cannot satisfy the prejudice prong of Strickland.

Additionally, as noted by Respondents, Petitioner's claim has no merit as Petitioner actually qualified for sentencing as a prison release reoffender and the certified records admitted into evidence at sentencing support this conclusion.  Response at 44. Petitioner was released from Baker Correctional Institution on May 21, 2006 after serving time for armed robbery.[8]  Ex. D at 8-12.

---

[6] The Court previously found this portion of ground three is fully exhausted.  Order (Doc. 12).  The trial court made an *ore tenus* ruling on the post conviction motion denying this claim.  Ex. M at 216-17.  Petitioner appealed the denial of the claim.  Ex. Q. The 1st DCA affirmed the denial of this ground.  Ex. T.  The 1st DCA also per curiam denied a petition for writ of mandamus on its merits resolving any ambiguity regarding the exhaustion of this ground.  Gallion v. State, 235 So.3d 1059 (Fla. 1st DCA 2018) (per curiam).

[7] Rule 3.800(a)(1), Fla. R. Crim. P., provides: "[a] court may at any time correct an illegal sentence imposed by it[.]"

[8] Petitioner's contention that counsel performed deficiently for failing to object to imposition of the prison releasee reoffender sentence on the ground that Petitioner had been released to a probationary sentence has no merit as Petitioner had been released on a probationary sentence on April 3, 2000, but was

The instant crime of robbery occurred on October 27, 2006. Ex. A at 12, 59. Thus, the robbery was committed within three years of Petitioner's release from a state correctional facility. See Ex. A at 24, Notice of Intent to Classify Defendant as a Prison Release Re-Offender. See also Fla. Stat. § 775.082(9)(a)1.g. (2006).

Furthermore, Petitioner's claim that his counsel failed to object is unsupported by the record. In fact, the record shows counsel did object at the behest of his client. At sentencing, the prosecutor announced he had a certified copy of Petitioner's release date from the Florida Department of Corrections. Ex. A at 106. Mr. Thompson stated:

> Your Honor, my client wished me to advise the Court that -- and **take exception to being classified as a prison release reoffender on the basis that he was on probation and was on a violation of probation and not on an original sentence on the - and released on that.** Again, based on that -- I would mention that.

Id. at 106-107 (emphasis added).

Counsel admitted to the court he had no case or statutory law to support this contention. Id. at 107. The court found the law to be quite explicit, stating if a person is sent back to prison on a probation violation and that individual is ultimately released from prison, that is when the time begins to run for prison releasee purposes. Id. Mr. Thompson agreed that that was his

---

returned to prison and eventually released from incarceration on May 21, 2006. Ex. D at 12.

understanding of the law as well, but his client wished him to make the argument. Id.

The trial court made an *ore tenus* ruling denying this ground of the post conviction motion. Ex. M at 216-17. Petitioner appealed the denial of the claim. Ex. Q. The 1st DCA affirmed. Ex. T. The 1st DCA also per curiam denied a petition for writ of mandamus on its merits. Gallion, 235 So.3d 1059. With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision. The state court's ruling is well-supported by the record and by controlling case law, Strickland and its progeny. Petitioner raised the issue in his post conviction motion, the trial court denied the motion and the appellate court affirmed. This Court concludes the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief.

### D.  Ground Four

Petitioner contends his trial counsel rendered ineffective assistance for failure to timely object to the state's late disclosure of evidence. Petition at 23. The record shows counsel objected, but he objected after the jury was sworn, raising the ire of the trial judge. Petitioner submits that the conversation that followed between Mr. Thompson and the court did not amount to a Richardson hearing. Id. at 27.

Petitioner raised this claim in his Rule 3.850 motion, Ex. L at 7-14, and the circuit court addressed this ground after conducting an evidentiary hearing. Ex. Y at 427-547; Ex. X. In its order, the circuit court set forth the two-pronged Strickland standard before addressing the grounds for relief. Ex. X at 142-44. The court also referenced Richardson, 246 So.2d at 776 (requiring a trial court to conduct a hearing to determine, upon objection, (1) if there was a discovery violation; (2) if a discovery violation did occur, whether it was inadvertent or willful and whether it was trivial or substantial; and (3) its effect on the defense's ability to prepare for trial). The circuit court noted that failure to conduct a Richardson hearing can be deemed harmless error if the court finds there is no reasonable possibility that the discovery violation materially hindered the defendant's trial preparation or strategy. Ex. X at 145.

After the circuit court's introduction to the claim and its rendition of the relevant law, the court took the trial record under consideration. The court noted, after denying Mr. Thompson's objection and request for mistrial, the trial court addressed the question of prejudice, asking Mr. Thompson what he would have done had the disclosure been timely. Ex. X at 146. Mr. Thompson said he would have used the information in depositions with certain witnesses. Id. The trial court provided Mr. Thompson the opportunity to depose the relevant witnesses prior to their taking the stand, and Mr. Thompson took that opportunity, deposing the

relevant witness prior to his taking the stand. _Id_. The circuit court also noted Mr. Thompson included his objections in the motion for new trial and amended motion for new trial. _Id_.

The circuit court, in addressing the claim of ineffective assistance of counsel, considered evidentiary hearing testimony. _Id_. The court found Petitioner failed to overcome the presumption that counsel's performance fell within the wide range of reasonably professional assistance. _Id_. The court described Mr. Thompson's wealth of experience; the fact he was a long-standing member, in good standing, of the Florida Bar; and the fact counsel was well educated in the discovery rules as well as Richardson hearings. _Id_. The court succinctly summarized the rest of Mr. Thompson's testimony:

> Mr. Thompson testified that he did not believe the late disclosure was prejudicial or that suppression of the underlying evidence was a strategically significant issue. Rather, according to counsel, the focus of his strategy was keeping other related crimes and Defendant's criminal history from being introduced during trial. Mr. Thompson testified that he believed Defendant's identification could be established by a variety of means and therefore identification via the photograph and clothing was not a significant issue. Furthermore, Mr. Thompson testified that he felt the trial court's remedy was sufficient to address his concerns regarding the late disclosure and that further argument or objection would have a negative impact on his client's case generally. Additionally, Mr. Thompson testified that he deposed the relevant witnesses regarding the photograph and clothing but he could find no grounds to support a motion to suppress. Lastly, Mr. Thompson testified that his

actions were sufficient to preserve the issue
on appeal.

Ex. X at 146-47.

The circuit court found Mr. Thompson's testimony credible. _Id_. at 147. The court found counsel sought and obtained an effective remedy for the late disclosure. _Id_. The court further held counsel's performance did not fall outside the wide range of reasonably professional assistance and Petitioner ultimately failed to establish that counsel's actions regarding the late disclosure actually caused prejudice. _Id_. Finally, the court concluded Petitioner failed to refute "Mr. Thompson's assessment that the extended discussion was akin to a _Richardson_ hearing and the remedy provided by the trial court was appropriate[.]" _Id_.

Petitioner briefed this issue on appeal of the denial of the Rule 3.850 motion. Ex. Z. The 1st DCA affirmed per curiam without explanation. Ex. CC. This affirmance is an adjudication on the merits entitled to AEDPA deference. This Court will employ the "look through" presumption; the Court will "look through" the unexplained decision to the last related state court decision that provides relevant rationale (the circuit court's decision denying post conviction relief) and will presume the unexplained 1st DCA decision adopted the same reasoning as the circuit court. _Wilson_.

This Court is convinced that fairminded jurists could agree with the circuit court's decision. Additionally, the Court defers to the state court's factual findings, including its credibility

assessments.  Petitioner has failed to rebut their correctness with clear and convincing evidence.  <u>See</u> 28 U.S.C. 2254(e)(1). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" <u>Consalvo v. Sec'y for Dep't of Corr.</u>, 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)), <u>cert</u>. <u>denied</u>, 568 U.S. 849 (2012).

As the state court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of counsel, Petitioner is not entitled to habeas relief.  The state court's ruling is entitled to AEDPA deference.  The 1st DCA affirmed the trial court's decision. Ex. CC.  The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.  Thus, AEDPA deference is due, and Petitioner is not entitled to relief on ground four.

### E.  Ground Five

In his fifth ground for relief, Petitioner claims his trial counsel was ineffective for affirmatively misadvising him that if

he were to testify at trial, the jury would automatically learn the nature and details of his prior convictions. Petition at 28. Petitioner exhausted this ground by raising it in a Rule 3.850 motion. Ex. L at 15-19. The circuit court determined this claim merited an evidentiary hearing. <u>Id</u>. at 144. After conducting an evidentiary hearing, the circuit court denied the claim. <u>Id</u>. at 151. Petitioner appealed the denial of this claim, and the 1st DCA affirmed finding no error in the trial court's denial of relief as to this ground. Ex. T.

Upon review, the circuit court found Mr. Thompson's testimony to be credible, and Mr. Thompson "denied ever telling the Defendant that the nature and details of his prior convictions would come into evidence if he testified." Ex. L at 151. The circuit court described Mr. Thompson's advice: Petitioner would have to testify truthfully regarding his priors, otherwise, if he failed to do so, only then could the state admit the prior judgment and sentence of his prior conviction. <u>Id</u>.

After making its credibility determination, the court found counsel's representation conformed to prevailing professional norms. <u>Id</u>. Applying the <u>Strickland</u> standard, the court found Petitioner failed to establish deficient performance and declined to address the remaining <u>Strickland</u> prong.

The trial record demonstrates, after the state rested, defense

counsel responded to the court's inquiry as to whether his client would testify and said, "[t]hat decision is still pending." Ex. C at 279. Mr. Thompson informed the court he advised his client of his right to testify, and his right not to testify. Id. The defense called the victim and one other witness. Id. at 280-88. Thereafter, Mr. Thompson asked for a brief recess to confer with his client. Id. at 288-89.

After this conference, Mr. Thompson told the court his client decided not to take the stand, they were not going to call any more witnesses, and the defense would rest. Id. at 289. The following colloquy took place between the court and Petitioner:[9]

> THE COURT: Did you hear what your lawyer just announced?
>
> THE DEFENDANT: Yes, sir, Mr. Carithers.
>
> THE COURT: And he said you're not intending to testify, but there's only one person in the world that can make that decision, do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you understand who that person is?
>
> THE DEFENDANT: I myself, Jerry Gallion, Jr., myself.
>
> THE COURT: So that is your personal decision not to testify?
>
> THE DEFENDANT: Yes, sir.

---

[9] Of note, the trial court did not place Petitioner under oath.

THE COURT: You realize you could testify if you wanted to?

THE DEFENDANT: Yes, sir.

THE COURT: And have you had enough time to talk this decision over with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: He hasn't tried to force this decision on you?

THE DEFENDANT: No, sir.

THE COURT: Any other witnesses you wanted him to call in this case?

THE DEFENDANT: No, sir.

Id. at 289-90.

The right to testify is a fundamental right, and it is up to the defendant himself to decide whether to testify or not, Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289-90 (11th Cir. 2016) (the fundamental right to testify cannot be waived either by the trial court or by defense counsel, nor can defense counsel compel a defendant to remain silent), but defense counsel bears the primary responsibility of providing advice concerning the right to testify or not to testify, and the strategic implications of these choices.

Based on the trial court's inquiry and Petitioner's responses, the Petitioner clearly expressed his intention not to testify. If there was any misadvice on the part of counsel concerning the actual right to testify, the trial court cured it by

correctly informing Petitioner about his absolute right to testify on his own behalf and the fact that it was Petitioner's decision, and his alone as to whether to testify or not. Importantly, regarding Petitioner's decision not to take the stand, Petitioner faced the negative factor of his being a convicted felon; therefore, if he elected to testify, at a minimum, the jury would be apprised of the number of Petitioner's prior felony convictions.

At the evidentiary hearing, Ms. Thompson said he advised his client that if he were asked if he had a felony conviction, he should answer yes, "and if he did answer yes that would be the end of the conversation." Ex. M at 180. Mr. Thompson then advised, if Petitioner failed to respond yes, the state would be allowed to bring in the judgment and sentence, show it to him to refresh his memory, and give him the opportunity to admit the prior felony conviction, and then "at that point they'd be talking about what the charge was." Id. He explained: "[t]hey wouldn't be able to go into – into what the particulars were. They would simply be able to say isn't it true you've been convicted of a, I believe it was an armed robbery, and that would be the end of it." Id.

In its order denying post conviction relief, the circuit court rejected this claim of ineffective assistance of counsel finding Mr. Thompson's testimony credible. Ex. L at 151. The trial court highlighted Mr. Thompson's advice to Petitioner, as described during the evidentiary hearing. Id. In conclusion, the court

found Petitioner did not satisfy the performance prong of Strickland.

Based on the record, the trial court relied on the Strickland two-pronged standard in reviewing Petitioner's claim of ineffective assistance of counsel. Ex. L at 151. In order to obtain relief under a Sixth Amendment claim of ineffective assistance of counsel, a defendant must not only establish deficient performance by counsel, but the defendant must also demonstrate prejudice under the two-pronged Strickland test. The court found Petitioner did not demonstrate deficient performance and, consequently, it did not need to reach the remaining prejudice prong under Strickland because Petitioner failed to satisfy the first prong. Ex. L at 151. In failing to satisfy the performance prong of Strickland, Petitioner could not prevail on his claim of ineffective assistance of counsel. See Bester v. Warden, 836 F.3d 1331, 1337 (11th Cir. 2016) (finding a petitioner must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of counsel), cert. denied, 137 S.Ct. 819 (2017). The 1st DCA affirmed this decision, finding no error. Ex. T.

Fair minded jurists could agree with the state court's ruling in rejecting this claim of ineffective assistance of trial counsel. With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision. The state court's ruling is well-supported by the record and by

controlling case law, <u>Strickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground five.

### F. Ground Six

In his sixth ground for post conviction relief, Petitioner raises a claim of ineffective assistance of trial counsel for failure to investigate and depose six witnesses and present their testimony at trial. Petition at 32-34. Petitioner raised this claim in ground 1(d) of his Rule 3.850 motion. Ex. L at 19-22. After an evidentiary hearing, the circuit court denied relief. Ex. X at 147-53. Petitioner appealed, briefing this issue. Ex. Z at 15-21. The 1st DCA affirmed per curiam. Ex. CC.

With respect to this ground, Petitioner contends, had the six identified witnesses been investigated, interviewed, deposed and called by the defense, these witnesses could have offered testimony which would have impeached several of the state's witnesses, and these select witnesses would have offered exculpatory testimony that would have refuted the state's theory of the case. Petition at 32. Petitioner said, the state's theory of the case: "revolves around its contention that Mr. Gallion robbed Riles at gun point and fled with his [the victim's] SUV upon the act of imposing fear; a crucial underlined element which is necessary in order to

substantiate a conviction for robbery." Id. Also, Petitioner claims each of the identified witnesses told counsel of his/her availability to testify. Id.

In his Petition, Petitioner states Ms. Linda Robinson, if called at trial, would have testified she had observed Petitioner in the SUV on several occasions during the months leading up to the robbery, and the SUV was used during her move. Id. Petitioner states: "Mrs. Robinson knew it to be common knowledge that Petitioner would routinely rent the vehicle from Mr. Riles and return it at specific times agreed upon between both men." Id. Ms. Robinson testified at the evidentiary hearing.

Petitioner's claim with respect to Ms. Robinson has no merit. Linda Robinson's deposition was conducted on September 7, 2007. Ex. L at 42-51. On direct examination, the prosecutor said: "You've been listed as a witness, or going to be, by Mr. Gallion's attorney. And I'm trying to figure out what relevant information you would have in regards to this case." Id. at 44. Ms. Robinson described Petitioner as driving a four-door, new-like, gray SUV. Id. at 45. She attested she did not know whose car it was and she did not know the make of the car. Id. at 45-46. Ms. Robinson testified that Petitioner never said the name of the owner of the vehicle. Id. at 46. Ms. Robinson also testified she did not know how Petitioner obtained the car. Id. at 47.

During the deposition, Mr. Thompson cross examined Ms. Robinson. Id. at 48. Mr. Thompson stated on the record that they had talked the day before the deposition. Id. at 48. Ms. Robinson testified she saw Petitioner with the SUV two or three times. Id. at 49. Upon inquiry, Ms. Robinson testified she would not recognize the vehicle. Id.

After investigation, it was clear Ms. Robinson could not recognize the vehicle, she did not know Petitioner routinely rented a vehicle from Mr. Riles, she did not know about any rental agreement between Petitioner and Mr. Riles, and she had never been given the name of the owner of the vehicle she had observed. At most, she testified at deposition she had seen Petitioner driving a gray SUV on a few occasions.

The circuit court, before addressing Petitioner's claim of ineffective assistance of counsel, set forth the two-pronged Strickland standard of review for this claim grounded in the Sixth Amendment. Ex. X at 142-44. The court said Petitioner had to state with particularity certain things in order to support a claim of failure to investigate or call a witness: (1) the identity of the prospective witness; the substance of the expected testimony; and whether the witness would have been available to testify at trial. Id. at 147-48 (citations omitted). Once met, the remaining crucial question is whether the witness may have been able to cast doubt on the defendant's guilt. Id. at 148. However, if a

reasonable investigation had been conducted, any decision of counsel based on that investigation is presumed to be reasonable and strategic. Id.

Indeed, "[wh]ich witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [a court] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995), cert. denied, 516 U.S. 856 (1995). In order to demonstrate ineffectiveness, the decision must be so patently unreasonable that no competent attorney would have chosen that path.

The circuit court opined:

> With regard to Linda Robinson, the Court finds that Mr. Thompson was not ineffective. Mr. Thompson testified that he deposed Ms. Robinson and found her potential testimony to be "weak" and easily discredited by the State. Mr. Thompson further testified that the State actually discredited Ms. Robinson during the deposition and his attempts to rehabilitate her as a witness were only marginally effective. Mr. Thompson testified that he did keep Ms. Robinson on his list of potential witnesses all through the trial but made the strategic decision not to call her based upon his estimation that her potential testimony would be of little use and the opportunity to discredit her on the stand was likely to have a negative impact on Defendant's case overall.

Ex. X at 149.

The court did find Ms. Robinson's testimony at the evidentiary hearing credible, but the court also found her testimony did not refute or contradict that of Mr. Thompson. Id. In fact, the court

found her testimony to be consistent with that of Mr. Thompson. Id. Finally, the court found Mr. Thompson's decision not to call Ms. Robinson was reasonable trial strategy. Id.

The state's court determination is consistent with federal precedent. The decision not to call Ms. Robinson was not so patently unreasonable that no competent attorney would have made that decision. Petitioner's counsel made a strategic decision not to call Ms. Robinson at trial, and this type of tactical decision is entitled to deference and will seldom, if ever, be second guessed.[10] See Parlaman v. Sec'y, Dep't of Corr., No. 8:14-cv-2644-T-23TGW, 2018 WL 1326891, at *6 (M.D. Fla. Mar. 15, 2018) (noting entitlement to deference for counsel's strategic decisions in matters normally entrusted to counsel).

Petitioner also claims Mr. Thompson was ineffective for failure to investigate, depose and call Leroy Harrison, III, and Johnny Lee. Petition at 32-33. Petitioner asserts Mr. Harrison would have testified that he witnessed several drug exchanges between Mr. Riles and Petitioner and knew Petitioner paid Riles for the use of a vehicle in drugs. Id. Petitioner claims Mr. Lee was a frequent crack user who smoked crack with Mr. Riles, knew Mr. Riles rented his vehicle out in exchange for drugs, and knew this type of exchange took place between Riles and Petitioner. Id.

---

[10] Mr. Thompson decided to call Ms. Robinson at the sentencing hearing, and Mr. Thompson believed Ms. Robinson's testimony was helpful for sentencing purposes. Ex. Y at 444.

At the evidentiary hearing, Mr. Thompson testified that he reviewed his file, notes, and Petitioner's letters, but he found no mention of a Leroy Harrison. Ex. Y at 445. Mr. Thompson did find that Petitioner told him there were witnesses at a car wash. _Id_. Mr. Thompson undertook an investigation and attempted to find these witnesses. _Id_. Mr. Thompson testified he could not find any existence of Mr. Harrison and Johnny Lee in his file. _Id_. Mr. Thompson testified, had he been given their names, he would have investigated and then made a tactical decision to either use them or not. _Id_. at 446. Mr. Thompson testified that the best witness turned out to be Ms. Robinson, but in the end, she turned out not to be a very good trial witness as she did not have a very good memory. _Id_.

The circuit court, crediting counsel's testimony, rejected Petitioner's claim of ineffectiveness of counsel:

> With regard to Leroy Harrison and Johnny Lee, the Court finds Mr. Thompson was not ineffective. Mr. Thompson testified that he reviewed his notes and case files thoroughly but found no reference to these two alleged witnesses. Mr. Thompson further testified that he attempted to locate potential witnesses (unnamed) based on statements from Defendant about witnesses who could be located at a car wash. Mr. Thompson testified that he visited the car wash, prior to trial, in [an] attempt to locate any potential witnesses. Mr. Thompson opined that Mr. Harrison and Mr. Lee may have been the unnamed witnesses he attempted to locate at the car wash. However, Mr. Thompson also testified that his efforts at the car wash did not generate any useful information and certainly no potential

witnesses. Mr. Thompson also asserted that it is his standard practice and habit to always investigate and attempt to locate potential witnesses whenever a client indicates a witness may exist. Defendant offers no evidence or argument to refute Mr. Thompson's assertion that Defendant never provided him with the names Leroy Harrison or Johnny Lee prior to or during Defendant's trial. Accordingly, the Court finds that the testimony confirms Mr. Thompson was not ineffective because he did conduct a reasonable investigation in order to develop or locate Mr. Harrison or Mr. Lee as potential witnesses.

Ex. X at 149-50.

Mr. Thompson conducted a reasonable investigation. As suggested by Petitioner, Mr. Thompson attempted to find witnesses at a car wash. Although Mr. Thompson was unable to locate or develop these witnesses, it was not due to a failure to investigate. Petitioner has failed to satisfy the performance prong of Strickland.

Additionally, Petitioner claims Mr. Thompson was ineffective for failure to investigate, depose and call Elijah Laster. Petition at 32-33. Petitioner alleges Mr. Laster would have testified he was present on the day of the arrest. Id. at 33. Petitioner states, during the police investigation, Mr. Laster told the police that Mr. Gallion rented the vehicle from Riles several times prior to the arrest. Id. Petitioner asserts Mr. Laster would have offered exculpatory information in relation to the

fleeing charge, testifying that "he knew Mr. Gallion was not the driver of the vehicle at the time of the pursuit." Id.

This claim is without merit. On December 11, 2006, the state included Elijah Laster as a Category A witness in the State's Discovery Exhibit and Demand for Reciprocal Discovery. Ex. A at 19-20. On December 28, 2006, Rhonda P. Waters, an assistant public defender and Petitioner's previous counsel, disclosed to the prosecution the names of defense witnesses, including Elijah Laster. Id. at 22-23. Mr. Thompson was aware of Mr. Laster and that he was listed as a state's Category A witness. Ex. Y at 447. Mr. Thompson knew Mr. Laster was detained at the scene of the arrest. Id. Mr. Thompson also recalled that Mr. Laster named Petitioner as the driver of the fleeing vehicle. Id. Although Mr. Thompson did not find any notes concerning any conversations with Mr. Laster, Mr. Thompson knew Mr. Laster would be highly "impeachable" if the defense were to call him. Id. Mr. Thompson said he was sure that, at that time, he would not have thought Mr. Laster to be helpful to the defense. Id.

As for the contention that counsel failed to depose Mr. Laster, the Public Defender's file apparently showed Mr. Laster could not be found to be deposed. Id. at 447-48. At the evidentiary hearing, Mr. Thompson confirmed there were problems finding a number of witnesses. Id. at 448.

After the evidentiary hearing, the circuit court addressed this alleged failure of counsel. The court found Mr. Thompson's testimony credible. Ex. X at 150. The court further found Mr. Thompson was not ineffective. Id. In doing so, the court concluded that Mr. Thompson conducted a reasonable investigation of Mr. Laster, and counsel's decision not to call Mr. Laster as a witness was reasonable trial strategy. Id. at 151.

In support, the court succinctly summarized Mr. Thompson's testimony:

> Mr. Thompson testified that Mr. Laster was listed as a witness for the State and further that he is certain he would have interviewed Mr. Laster because he was listed [as a] State's witness. Mr. Thompson testified that he could not locate any specific notes related to that interview but did recall that Mr. Laster's testimony would not be exculpatory. Rather, Mr. Thompson testified that he recalls that Mr. Laster would have identified Defendant as the driver of the vehicle Defendant was convicted of stealing. Defendant offered no evidence or argument to refute or challenge Mr. Thompson's testimony.

Id. at 150.

With regard to the Mongers, Darrell Monger and Ola Rae Monger, the court found Mr. Thompson was not ineffective. Id. at 151. The Mongers were listed as Category A witnesses for the state as to the original two counts of the information. Ex. A at 19-20; Ex. Y at 448-49. The defense also listed the Mongers as witnesses. Ex. A at 22-23.

In his Petition, Petitioner alleges Darrell and Ola Rae Monger would have testified Petitioner gave them rides to and from a store on October 27, 2006, the date of the robbery, and Petitioner was in full possession of the vehicle that day. Petition at 33. With regard to counsel's alleged failure to depose Darrell Monger, Mr. Thompson testified "[w]e could not find him." Ex. Y at 448. As for any failure to depose and investigate Ms. Monger, the record demonstrates she was deposed. Ex. L at 52-70. She was deposed by the state and the record shows Mr. Boston was in attendance for the defense. Id. at 52, 69.

Upon inquiry at the evidentiary hearing, Mr. Thompson explained he spent a lot of time reviewing Ms. Monger's deposition. Ex. Y at 449. Mr. Thompson said he would have provided Petitioner with a copy of that deposition and gone over it with him. Id. Mr. Thompson made a tactical decision not to call the Mongers as witnesses. Mr. Thompson explained he had managed to obtain severance of the first two counts from the remaining counts and he did not want the jury to hear anything about the severed charges that involved the Mongers. Id. Also, Mr. Thompson said he did not want to open the door for the state to bring in evidence concerning other crimes or Petitioner's history. Id. at 449-50.

Concerning counsel's decision-making with respect to both of these potential witnesses, the circuit court found Mr. Thompson was not ineffective. Ex. X at 151. The court noted "Mr. Monger was

notoriously difficult to locate" and counsel could not recall if Mr. Monger was ever located prior to trial.  Id.  If was also clear that counsel would have made the strategic decision not to call Mr. Monger if he were found.  Id. at 151; Ex. Y at 464-65.

Mr. Thompson said he did not call Ms. Monger, even though she mentioned in her deposition Petitioner driving a gray car, because counsel feared it would open the door to another sort of crime: "he's our friend and he stole from us."  Ex. Y at 463.  The Information charging Petitioner as the perpetrator of crimes names Ola Monger as the victim of an armed robbery and an aggravated battery with a deadly weapon in the first two counts.  Ex. A at 12-13.

The circuit court found Mr. Thompson conducted a reasonable investigation of the Mongers and his decision not to call the Mongers was reasonable trial strategy.  Ex. X at 152.  The court found Mr. Thompson's testimony quite convincing.  Id.  Denying relief on Petitioner's contention that Mr. Thompson failed to investigate and call exculpatory witnesses, the court opined:

> Regarding all the alleged exculpatory witnesses, Mr. Thompson was clear on the stand that it was his practice to pursue any and all potential witnesses.  He testified that he attempted to locate potential witnesses despite having incomplete information, even lacking names.  He further testified that his investigation and efforts did not generate any exculpatory witnesses.  He also testified that those witnesses who had been located and interviewed were not called at trial because their usefulness was highly questionable and

certainly not exculpatory.  Lastly, he clearly explained his overall strategy and how his decisions not to present certain witnesses fit within that strategy.

Id. at 152-53.

The 1st DCA per curiam affirmed the circuit court's decision. Ex. CC.  This decision is an adjudication on the merits and is entitled to deference under 28 U.S.C. § 2254(d).  Applying Wilson's look-through presumption, the rejection of the claim of ineffective assistance of counsel for failure to investigate, depose and call certain witnesses was based on a reasonable determination of the facts and a reasonable application of Strickland.  Moreover, evidence about the testimony of putative witnesses must generally be presented in the form of actual testimony by the witness or an affidavit.  Petitioner presented only the testimony of Ms. Robinson at the evidentiary hearing.  As noted by the circuit court, Petitioner failed to substantiate the allegations in his motion by calling his alleged witnesses at the evidentiary hearing (or by presenting affidavits of those witnesses), certainly undermining the strength of the allegations.  Ex. X at 153.

The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.  When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to

do so in <u>Strickland</u>, 466 U.S. at 689. This Court must consider that counsel is given wide latitude in making tactical decisions, like selecting whom to call as witnesses. <u>Id</u>.

The Court recognizes, "[t]here are countless ways to provide effective assistance in any given case." <u>Id</u>. The trial court found Mr. Thompson made decisions consistent with his overall strategy, and his decisions not to call certain witnesses fit his strategy. Moreover, the circuit court found counsel's decision not to call those witnesses located and interviewed was a sound decision based on the their highly questionable usefulness and lack of truly exculpatory testimony. Finally, the circuit court acknowledged that counsel attempted to find some witnesses at a car wash, but they were not located and their testimony could not be developed.

The Court finds counsel's decision-making was not so patently unreasonable that no competent attorney would have chosen that path. His tactical decisions were based on sound reasoning, after investigation and significant attempts to locate witnesses.

As stated previously, AEDPA deference is warranted. The record shows the 1st DCA affirmed the decision of the trial court in denying this ground, and this Court will presume that the state court adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is

unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed to do so. The Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground six.

### G. Ground Seven

In his seventh ground for habeas relief, Petitioner raises a claim of ineffective assistance of counsel for failure to move to suppress an incriminating statement made by Petitioner during his arrest.[11] Petition at 35. Petitioner raised this claim in ground 1(e) of the Rule 3.850 motion, asserting the statement to the arresting officer was inadmissible hearsay. Ex. L at 22-23. After an evidentiary hearing, in its order denying post conviction relief, the circuit court applied the two-pronged Strickland standard of review governing claims of ineffective assistance of counsel. Ex. X at 142-44. After appointing counsel and conducting an evidentiary hearing, the trial court denied post conviction relief on this ground. Id. at 153-56. Petitioner appealed the

---

[11] Petitioner based this claim on the fact that Officer Frederick Fillingham, Jr., testified, when he was standing in the proximity of Petitioner at his arrest, Officer Fillingham heard Petitioner say "I ain't car-jacked nobody." Petition at 36.

denial of his post conviction motion, and the 1st DCA per curiam affirmed. Ex. CC.

At the evidentiary hearing, Mr. Thompson testified, "[t]here was no ground for a motion to suppress that statement." Ex. Y at 452. He considered the statement to be an excited, spontaneous utterance. _Id_. Instead of filing a motion to suppress, counsel believed the best tactic was to challenge the statement by calling witnesses to counter Officer Fillingham's testimony. Indeed, Mr. Thompson successfully showed that Officer Fillingham was alone in his testimony that Petitioner made the carjacking statement. Mr. Thompson testified he called the home owner, Floyd Dixon, a seemingly unbiased witness, who testified he did not hear Petitioner make that statement. _Id_. at 452-54. Mr. Dixon, at trial, testified he was in a position to hear Petitioner speak and Mr. Dixon did not hear Petitioner say "I'm not a car-jacker." Ex. C at 285.

The other officer in proximity of Petitioner during the arrest, Officer Phillip J. Rossomano, testified he did not recall any statements made by Petitioner immediately upon his being apprehended. _Id_. at 263. Also of note, Mr. Thompson entered a contemporaneous objection to Officer's Fillingham's testimony on hearsay grounds; however, the court overruled the objection. _Id_. at 235-36.

The circuit court found, although Mr. Thompson contemplated moving to suppress the statement, he made a strategic decision to not file an unsupported motion to suppress and instead utilized the testimony of other witnesses to discredit Officer Fillingham's testimony. Ex. X at 154-55. Additionally, Mr. Thompson objected to Officer Fillingham's testimony at trial prior to the statement being presented to the jury. Id. at 154. The court also made mention of Mr. Thompson's efforts to challenge Officer Fillingham's testimony through "hot and heavy" cross examination. Id. at 155. When asked about his failure to file a motion to suppress, "Mr. Thompson was emphatic in responding that the homeowner's testimony would not support a motion to suppress but was strategically used to discredit the State's witness at trial." Id. The trial court found Mr. Thompson's testimony to be "credible and accurate[.]" Id. The court also found defense counsel employed a reasonable trial strategy. Id. at 155-56.

Petitioner has not rebutted the circuit court's credibility and factual determinations with clear and convincing evidence. See 28 U.S.C. §2254(e). Furthermore, Petitioner is unable to establish the state court decision denying this ground was contrary to or an unreasonable application of federal law. The record demonstrates the circuit court properly applied the Strickland standard and found no deficient performance on the part of counsel.

Since the motion to suppress would have been futile, as exhibited by the trial court's overruling of the contemporaneous objection based on hearsay grounds, counsel was not ineffective for failing to file a motion seeking suppression of the statement. As such, defense counsel cannot be deemed to have performed deficiently by failing to file a motion to suppress, and it follows that Petitioner cannot satisfy the prejudice prong of Strickland due to the futility of such a motion. As noted by the circuit court, Mr. Thompson's assessment of whether he could present a supportable motion to suppress was accurate. Here, Petitioner has failed to establish prejudice. It is not reasonably likely that, but for counsel's alleged deficient performance, the result of the proceeding would have been different. Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 709 (11th Cir.) (per curiam) (requiring a substantial likelihood of a different result, not just conceivable), cert. denied, 136 S.Ct. 114 (2015).

Petitioner appealed the denial of his Rule 3.850 motion. Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Ex. CC. Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is

not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground seven is due to be denied.

## H. Ground Eight

The eighth ground is a claim of ineffective assistance of counsel for providing affirmative misadvice concerning the penalty Petitioner faced and for failing to convey the strength and weaknesses of the state's case, depriving Petitioner of the ability to make an informed decision as to whether or not to accept the state's favorable plea offer. Petition at 37. In his supporting facts, Petitioner states that during pretrial proceedings, the state offered a negotiated plea of ten years in the Department of Corrections which Petitioner rejected based on counsel's misadvice that Petitioner would not have to serve any time. <u>Id</u>. Petitioner complains his counsel did not advise him of the ramifications of being adjudicated a prison release reoffender. <u>Id</u>. at 38. Petitioner also asserts Mr. Thompson led Petitioner to believe that the state had no case against him, and that if Petitioner did not testify and reveal the details of his criminal convictions, the state would be left with no case. <u>Id</u>. Petitioner alleges, based on this flawed advice of counsel, Petitioner elected to reject all plea offers and proceed to trial. <u>Id</u>.

Petitioner raised this ground in claim 1(f) of his Rule 3.850 motion. Ex. L at 23-25. At the evidentiary hearing, Petitioner

admitted he was served with the prison release reoffender notice. Ex. L at 168. The Notice of Intent to Classify Defendant as a Prison Release Re-Offender served on Petitioner states the state will seek the statutory maximum sentence. Ex. A at 24. It also alerted Petitioner to the fact that the state would rely on Petitioner's prior offense for robbery with a gun or deadly weapon and the fact he had been released from incarceration within three years of the date of the commission of the charged crimes to seek Petitioner's classification as a prison release reoffender. Id. The notice informed Petitioner that the state would seek to have Petitioner sentenced to life imprisonment.[12] Id. Finally, the notice states, "[i]n accordance with this classification, the Defendant shall only be released upon expiration of sentence and he shall not be eligible for parole, control release, or any form of early release. The Defendant must serve one hundred percent of the court imposed sentence." Id. The prosecutor read the notice in open court. Ex. M at 169.

Also, upon inquiry at the evidentiary hearing, Mr. Thompson provided details of what transpired during plea negotiations:

> There was - there was a negotiation about a ten-year offer, a possible ten-year offer. The State had a lot of problems with their witnesses on all of the counts. Ultimately

---

[12] The information charged Petitioner with four offenses, armed robbery, aggravated battery with a deadly weapon, robbery, and fleeing or attempting to elude a law enforcement officer. Ex. A at 12. Petitioner went to trial on the third and fourth counts.

> the first two counts, which my initial concern
> was about, there was a life felony, there was
> an HVO notice, but it wasn't valid, I didn't
> think. They didn't have the predicate
> convictions for it so I wasn't worried about
> that. It was a PRR notice. I knew that
> before I went and saw him the first time.

Id. at 182.

Mr. Thompson said there was a hang-up because Petitioner was not going to plead to the first two counts, and the state wanted a plea agreement to cover all four counts. Id. The discussion was about ten years, but nothing "really cut in stone[.]" Id. Mr. Thompson said he conveyed the possibility of a ten-year plea offer to Petitioner. Id. Although there were problems getting witnesses, Mr. Thompson said he advised Petitioner to never underestimate the power of the government to get a witness. Id. at 183.

Mr. Thompson stated he absolutely discussed with Petitioner the amount of time Petitioner was facing. Id. at 184. Mr. Thompson testified he advised Petitioner about the PRR or prison release reoffender notice, including the fact, if found guilty, Petitioner would be sentenced to the maximum sentence available to the judge on that charge and he would not get good and gain time, meaning he would serve one hundred percent of his sentence. Id. at 184-85. Mr. Thompson stated he even had a note to that effect in his case file. Id. at 185.

When asked if Petitioner was receptive to a possible ten-year plea offer, Mr. Thompson said no, because Petitioner believed the state would not be able to get the witnesses to trial. Id. at 187. Mr. Thompson testified he tried to disabuse Petitioner of that notion. Id. at 188. With respect to the sentence Petitioner was facing, Mr. Thompson advised Petitioner that if he were convicted of any of the second degree felonies, the court would give him fifteen years, and Petitioner would have to serve one hundred percent of his time. Id. at 211.

In denying this ground, the circuit court first noted Mr. Thompson was an experienced trial attorney, having completed hundreds of jury trials. Ex. L at 151. This is an important factor because "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1364 (11th Cir. 2009) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)), cert. denied, 562 U.S. 872 (2010).

Additionally, the trial court found Petitioner's claim that he was never told the penalties he was facing was refuted by the record containing the Prison Release Reoffender notice; the fact the prosecutor read the notice in open court, including the requirement Petitioner must serve one hundred percent of any sentence imposed by the court;, and Petitioner's admission the

notice was read in open court. Ex. L at 152-53. The court also found Mr. Thompson's testimony credible. Id. at 153. This Court must defer to the state court's findings of fact, 28 U.S.C. § 2254(e)(1), including applying deference to the trial court's credibility determination that resolves conflicting testimony. Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998), cert. denied, 526 U.S. 1047 (1999). Moreover, Petitioner has not rebutted the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Based on the credible testimony of Mr. Thompson concerning the fact he apprised Petitioner of the penalty he faced and the strengths and weaknesses of the state's case, Petitioner's claim is unavailing.

The court determined counsel's representation conformed to prevailing professional norms. Finding Petitioner failed to make a sufficient showing as to the first prong of Strickland, deficient performance, the court concluded it did not need to address the second prong, the prejudice prong. Id. at 153. The 1st DCA found no error in the trial court's denial of relief as to this ground. Ex. T.

Petitioner is not entitled to relief on ground eight because the state court's decision was not contrary to clearly established federal law, Strickland and its progeny, did not involve an unreasonable application of clearly established federal law, and

was not based on an unreasonable determination of the facts. Thus, ground eight is due to be denied.

## I. Ground Nine

In ground nine of the Petition, Petitioner raises a claim of ineffective assistance of counsel for failure to object and argue fundamental error when the trial court failed to properly instruct the jury on the elements of the crime of fleeing or attempting to elude a law enforcement officer. Petition at 40. Petitioner presented this claim in ground 1(g) of his Rule 3.850 motion. Ex. L at 25-30. There is no question that the circuit court employed the Strickland standard when reviewing this ground. Ex. X at 142-44. After reviewing the trial record, the court found the record conclusively refuted Petitioner's allegation of ineffective assistance regarding the jury instructions and verdict form. Defense counsel actively challenged and repeatedly objected to the instructions and verdict form. Id. at 157.

During the charge conference, Mr. Thompson asked for jury instructions on lesser included offenses as to both the robbery charge and the fleeing and eluding charge. Ex. B at 178-80. Mr. Thompson also complained about the jury instructions on fleeing and eluding. Id. at 190-92. He expressed his displeasure with it being "all encompassed in the one instruction." Id. at 196. He argued it should be read three times to clarify to the jury that there were three separate offenses with varying degrees of

seriousness for which Petitioner could be found guilty, or not guilty. Id. at 196-99. Mr. Thompson also argued that the composite instruction mischaracterized the aggravating circumstances as factors rather than elements, but the trial court remained unconvinced and denied counsel's objections and declined to adopt his requests to change the instructions. Id.

The record shows, throughout the proceeding, the terminology used to describe the crime of fleeing or attempting to elude a law enforcement officer varied. For example, in the introductory portion of the information, count four is referred to as "aggravated fleeing or attempting to elude a law enforcement officer." Ex. A at 12. However, count four of the information properly states, Petitioner, on October 29, 2006, "did wilfully flee or attempt to elude a law enforcement officer in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle with siren and lights activated, and during the course of the fleeing drove at a high speed or in any manner which demonstrates a wanton disregard for the safety or persons or property, contrary to the provisions of Section 316.1935(3)(a), Florida Statutes." Id.

The verdict form itself correctly refers to the offense as fleeing or attempting to elude a law enforcement officer. Ex. A at 60. It provides, if the jury were to find Petitioner guilty of the main offense beyond a reasonable doubt, the jury is then required

to make an additional finding and is given three options.  <u>Id</u>.  The

jury found Petitioner guilty of the main offense and then made the

additional finding that law enforcement had their lights and sirens

activated and the defendant drove at a high speed or in any manner

demonstrating a wanton disregard for the safety of persons or

property.  <u>Id</u>.

The circuit court, in denying this ground, recognized:

> Prosecutors, defense attorneys and courts
> have created a misnomer by unwittingly
> characterizing the crime of Fleeing and
> Attempting to Elude as aggravated and non-
> aggravated even though only subsection (4)
> defines Aggravated Fleeing, which involves
> damage to persons and/or property during a
> crash.  <u>Ward v. State</u>, 59 So.3d 1220, 1223 n.3
> (Fla. 4th DCA 2011).  However, even if the
> crime is improperly called *aggravated fleeing*,
> as long as the jury is presented with evidence
> and testimony as to the crime of non-
> aggravated fleeing and attempting to elude,
> and as long as the jury is instructed on the
> crime of *non-aggravated* Fleeing and Attempting
> to Elude pursuant to the correct subsection,
> the conviction will remain.  <u>Deltoro v. State</u>,
> 35 So.3d 177, 177 (Fla. 4th DCA 2010).
> Furthermore, even if the jury improperly
> convicted a defendant of Aggravated Fleeing,
> the remedy would be to reduce the defendant's
> conviction to the lesser included non-
> aggravated fleeing, not vacate his conviction.
> <u>Cunniff v. State</u>, 986 So.2d 656, 657-58 (Fla.
> 2d DCA 2008) and <u>Santiago v. State</u>, 847 So.2d
> 1060, 1062 (Fla. 2d DCA 2003).

Ex. X at 156.

The circuit court agreed with Petitioner that the trial court

used the terminology "aggravated fleeing" and "fleeing to elude"

interchangeably.  <u>Id</u>. at 157.  For example, during voir dire, the

court referred to the two charged crimes as robbery and aggravated fleeing or attempting to elude a law enforcement officer. Ex. B at 12. The court repeated this phraseology after the jury was sworn. Id. at 102. Later on, at the inception of the charge to the jury, the court referred to the fourth count as aggravated fleeing or attempting to elude a law enforcement officer. Ex. C at 345.

It is important to note that when the court charged the jury with the offense, the court correctly referred to the crime as being fleeing to elude a law enforcement officer. Id. at 351. The court provided the jury with the elements of fleeing to elude. Id. at 351-52. In addition, the court apprised the jury that they had to consider whether the state further proved aggravating circumstances beyond a reasonable doubt. Id. at 353. The court then provided the relevant aggravating circumstances. Id. at 353-54.

In denying Petitioner's claim of ineffective assistance of counsel, the circuit court held the jury instructions and verdict form correctly depict the elements of fleeing and attempting to elude. Ex. X at 157. The circuit court also found the trial court adequately explained the relevance of the aggravating circumstances and the option of selecting a lesser included crime if the jury remained unconvinced of the guilt of the greater charge beyond a reasonable doubt. Id.

The 1st DCA affirmed without an opinion and explanation. Ex. CC. This decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of Strickland.

Upon consideration, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. As such, ground nine is due to be denied.

### J. Ground Ten

In ground ten, Petitioner raises a claim of ineffective assistance of counsel for failure to object to the prosecutor's systemic striking of African American jurors from the panel. Petition at 44. Petitioner raised this ground in his post conviction motion in ground 1(i). Ex. L at 32-35. After an evidentiary hearing, the circuit court denied this ground. Ex. X at 159-62. The 1st DCA affirmed per curiam. Ex. CC.

The record shows the following transpired during jury selection. Mr. Maner, apparently a white male, advised the court

he had a DUI charge.[13] Ex. B at 27. Upon inquiry, he said it would not affect his ability to be fair in the case. <u>Id</u>. Mr. Maner said he had been treated fairly. <u>Id</u>. Mr. Aldridge, a black male, also said he had a DUI charge. <u>Id</u>. at 28. When asked if he had been treated poorly, he said, "I don't know." <u>Id</u>. When asked if he thought it would affect his ability to be fair to Petitioner or to the state, he responded, "I couldn't say." <u>Id</u>. at 29. Finally, Mr. Aldridge said he did not know if he could be fair in this case. <u>Id</u>.

Afterwards, the court said there may be some challenges for cause that may be stipulated to by the parties. <u>Id</u>. at 34. The court mentioned Mr. Aldridge. <u>Id</u>. at 35. The prosecutor agreed with the court, noting Mr. Aldridge's unresponsiveness. <u>Id</u>. at 35. Mr. Thompson conferred with Petitioner, and before counsel said anything to the court, the court told defense counsel there could be further questioning of Mr. Aldridge. <u>Id</u>. Mr. Thompson said, at this point, the defense would not agree to the challenge. <u>Id</u>.

The prosecutor asked additional questions of Mr. Aldridge. <u>Id</u>. at 60. Mr. Aldridge said he was still uncertain if he could be fair in the case. <u>Id</u>. at 61. Mr. Aldridge, after providing some explanation, said he could be fair but he said he was uncertain because the evidence had not yet been produced. <u>Id</u>. at 62. He

---

[13] Petitioner refers to Mr. Maner as a white male; however, the trial record is silent as to his race.

further clarified his response and said he could return a verdict of guilty if the state proved its case beyond a reasonable doubt. _Id_.

The state exercised a peremptory challenge as to Mr. Aldridge. _Id_. at 87. Immediately after that peremptory challenge, Mr. Thompson conferred with Petitioner. _Id_. After a couple of more strikes, Mr. Thompson said: "Your Honor, I just wanted to note earlier, the State's peremptory on Mr. Aldridge, Mr. Aldridge is black. I just wanted to note that for the record. I don't know if it's going to . . ." _Id_. at 88. After some additional strikes, the prosecutor stated: "Your Honor, also just I wanted to just state for the record as far as on No. 8, Mr. Aldridge, he has a prior petit theft, which is a crime of dishonesty, and there were still some unresponsiveness as to the reasons why –[.]" _Id_. at 89. The court responded, "[t]hey haven't asked for it." _Id_. Mr. Thompson confirmed that he had not asked for it. _Id_. The court concurred and said Mr. Aldridge's race was just noted for the record. _Id_. The record demonstrates both sides accepted the panel without objection. _Id_. at 92-93. Notably, defense counsel did not make any objection before the jury was sworn.

Based on the record, Petitioner named only one African American juror in his Rule 3.850 motion, Mr. Aldridge. The claim of ineffective assistance of counsel for failure to object to the systematic striking of African American jurors was vetted at the

evidentiary hearing. Ex. Y at 454. Mr. Thompson testified he noted on the record Mr. Aldridge was black because Mr. Thompson wanted to preserve that information for the record in case the state was going to engage in the systematic striking of African American jurors in an attempt to eliminate all black people from the jury. Id. at 510. Mr. Thompson said he saw no evidence that the state was attempting to systematically strike black jurors; therefore, no objection was made. Id.

Apparently, Petitioner is claiming counsel's failure to make and preserve Neil[14] objections prejudiced Petitioner by denying him his right to an impartial jury. In undertaking its review, the circuit court specifically noted Petitioner identified only one black juror by name: Mr. Aldridge. Ex. X at 159. In addressing the claim, the court, relying on counsel's testimony, described defense counsel's experience, routine practices, and thought processes during voir dire:

> Mr. Thompson testified that he was experienced and well educated on issues of racial bias during voir dire. Mr. Thompson further testified that it was his practice to always actively consult with his clients throughout voir dire to insure his clients are comfortable with the composition of the jury. Mr. Thompson also testified that it was his practice to plainly and clearly ask every client whether they are satisfied with the final panel of jurors before informing the Court that he was ready to proceed. Mr. Thompson could not recall any specific

---

[14] State v. Neil, 457 So.2d 481 (Fla. 1984).

discussion he may have had with Defendant
during voir dire but he asserted that he
definitely followed his standard practice in
Defendant's case and he would not have
proceeded if Defendant had expressed
discomfort with the selected panel. Mr.
Thompson maintained throughout his testimony
that he did not observe any evidence or
indication that the State was exercising its
peremptory challenges in a racially biased
manner.

Id. at 161.

The circuit court pointed out that Mr. Thompson attested he
had no valid ground to claim the panel was tainted by systemic
bias. Id. at 162. The court found Mr. Thompson's testimony
credible. Id. Of great import, the court found Petitioner failed
to demonstrate that a juror was actually biased. Id.

In order to adequately support a claim of ineffective
assistance of counsel, a petitioner must show counsel's error
actually resulted in a partial jury. Without a showing of a biased
jury, any failure on counsel's part to make an objection would have
no effect on a defendant's ability to receive a fair trial. Based
on Petitioner's failure to make this requisite showing, Petitioner
failed to establish the required Strickland prejudice.

Based on the record, the trial court relied on the Strickland
two-pronged standard in reviewing Petitioner's claim of ineffective
assistance of counsel. Ex. X at 142-44. In order to obtain relief
under a Sixth Amendment claim of ineffective assistance of counsel,
a defendant must not only establish deficient performance by

counsel, but the defendant must also demonstrate prejudice under the two-pronged _Strickland_ test.  The trial court found Petitioner failed to demonstrate either deficient performance or prejudice and denied the claim.  _Id_. at 162.  The 1st DCA affirmed per curiam. Ex. CC.

Upon review, the 1st DCA affirmed the decision of the trial court without opinion.  _Id_.  Pursuant to _Wilson_, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion.  The state has not attempted to rebut this presumption.  Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The state court's decision is not inconsistent with Supreme Court precedent.  The state court's adjudication of this claim is not contrary to or an unreasonable application of _Strickland_, or based on an unreasonable determination of the facts.  As such, ground ten is due to be denied.  In the alternative, as Petitioner has failed to satisfy the prejudice prong of _Stickland_, he is not entitled to habeas relief.

## K.  Ground Eleven

Petitioner, in his eleventh ground of the Petition, attempts to raise a free-standing claim of ineffective assistance of post conviction counsel.  Petition at 47.  In this ground, Petitioner asserts his post conviction counsel was ineffective for failing to interview and call witnesses to the evidentiary hearing.  _Id_.

There is no constitutional right to counsel in post conviction proceedings; therefore, there is no viable, freestanding claim for the denial of effective assistance in those proceedings. Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 944 (11th Cir. 2014). Indeed, "[l]ongstanding U.S. Supreme Court precedent holds that a habeas petitioner cannot assert a viable, freestanding claim for the denial of the effective assistance of state collateral counsel in post-conviction proceedings." Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1263 (11th Cir. 2014) (citations omitted), cert. denied, 135 S.Ct. 64 (2014), 135 S.Ct. 1894 (2015).

Although Petitioner states he relies on Martinez v. Ryan, 566 U.S. 1 (2012) and Trevino v. Thaler, 569 U.S. 413 (2013) to raise his free-standing claim of ineffective assistance of post conviction counsel, "Martinez did not . . . create a freestanding claim for challenging a conviction or sentence based on the alleged ineffective assistance of state post-conviction counsel." Lambrix, 756 F.3d at 1262 (footnote omitted). Thus, Petitioner fails to present a viable claim for post conviction relief. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Ground eleven is due to be denied.

## L. Ground Twelve

In ground twelve, Petitioner claims the post conviction court committed reversible error in reappointing post conviction counsel for the second evidentiary hearing on the post conviction motion, asserting a conflict arose during the first hearing. Petition at 49. This claim does not present a viable claim for post conviction relief:

> The Supreme Court has long held that there is no constitutional right to counsel in post-conviction proceedings, even in capital cases, which necessarily means that a habeas petitioner cannot assert a viable, freestanding claim for the denial of the effective assistance of counsel in such proceedings. See Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); see also 28 U.S.C. § 2261(e) ("The ineffectiveness or incompetence of counsel during State or Federal postconviction proceedings in a capital case shall not be a ground for relief in a proceeding arising under section 2254.").

Chavez, 742 F.3d at 944–45.

As stated previously, the ineffectiveness of state collateral counsel does not present a valid ground for habeas relief. Lambrix, 756 F.3d at 1263 (citation omitted). As there is no constitutional right to counsel in post conviction proceedings, error, if any, in the court's reappointing counsel does not rise to the level of a constitutional violation. Petitioner was not deprived of due process of law by the appointment of the public defender for his evidentiary proceedings in state court. As such,

Petitioner is not entitled to habeas relief on ground twelve.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**.

2.    This action is **DISMISSED WITH PREJUDICE**.

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[15]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

---

[15] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of
June, 2019.


_____
BRIAN J. DAVIS
United States District Judge


sa 6/13
c:
Jerry Gallion
Counsel of Record